15-0931 over to Corey and Anderson Thank you. Council, will you both step forward, introduce yourselves, and then we'll begin. My name is Patrick Cassidy for Corey and Anderson. Matthew Connors on behalf of the people. Thank you. Apollon, if you'd like to begin, please. May it please the court. Council, again, my name is Patrick Cassidy for the appellant, Corey Anderson. Your Honor, as you know, we raised three issues in the brief, but the state agrees that Corey's 95-year sentence should be vacated and a minimum new post-trial and new sentencing proceedings should be held where Corey was denied his right to counsel. We ask that this court go further, based on the two errors identified in Issue 1, that this court remand for a new trial and then only, if necessary, post-trial and post-sentencing proceedings. Your Honor, the issue before the jury here was whether Corey was accountable for the convict of the shooter, Jason Burns. The state's theory was based on two premises. One, that Corey had a gun, fired Burns, taking it from him, shooting into the car and killing the decedent. And two, that Corey himself had previously threatened to shoot people shortly before at the Quall's home. But Markell Carter, the only witness who said he saw Corey with a gun in his waistband, his testimony was improperly bolstered by inadmissible hearsay, that being prior consistent statements, while the assertion that Corey had made a prior threat was not based on facts that were in evidence, but facts not in evidence regarding the prior testimony of Raymond Darden. So based on those issues, which both went to the dispositive issue for the jury, whether Corey shared the criminal intent of the shooter. On the prior threat, your position is that the state just didn't complete the impeachment. They asked him, were you asked this question, and they didn't ask, did you give this answer. That's correct, Your Honor. They could have. No question but that they could have completed that impeachment. The record doesn't demonstrate conclusively that they could have, but we're not arguing that they couldn't have. And the problem is it was pointed out to them. Counsel recognized this. The counsel should then have objected when the state relied on the substance of that alleged prior threat as evidence of Corey's guilt. They told the jury that threat was what makes him legally accountable under our laws. And then they went further and actually alleged that Raymond Darden had told the police about that. That was not in evidence. And they said that Raymond Darden told the grand jury about that. And, in fact, that's not correct. The grand jury transcripts of Raymond Darden are in the record, and it's not contained in there. So it's only in Burns' trial. Correct. And I do think I may have misreferenced in my reply, called it the grand jury. But so we're clear, the only allegation that Darden ever testified about this was at Burns' trial. And so I apologize for that error in my reply brief. It's clear that he did not tell this to the grand jury. He went and asked. And there's no evidence he told this to the police. So the state's reliance on this came to its theory of accountability, as was its claim that Corey had the gun prior to the shooting. And that, again, was based on the testimony of Markel Carter. And he had a deal with the state. He, I don't know if he had, I don't know that he had a deal. I think he did testify, but he did have a hanging gun charge, a felony charge, hanging over his head. And I do think he testified that there had been no promises made by the state. But, of course, he was aware that the state held power over him, just because he was charged with this gun crime. Maybe I mean, I don't. I'm sorry. I don't know if he had a deal. But he also, so he had this hanging felony charge. He was on home monitoring at the time. He had originally, at some point, refused to testify in this case until given an immunity grant for anything he might say. But the immunity related to a violation of probation for a juvenile charge, correct? Well, he said that there was a... It wasn't a gun charge. It was the juvenile probation violation. His testimony was that that's why he wanted the immunity, because he didn't want to violate his juvenile probation. But the agreement itself, which I can't quote to you right now, but it is quoted in our briefs, I think was very broad. It's quoted in my opening brief. But he did say that the reason he wanted it was just because he didn't want to violate juvenile probation. But I'm not so sure we should accept that, because Markell Carter, he's had a lot of these proceedings just as so many of these other young men were that were in charge. Carter was what the person may have called the guard into the scene. So he was potentially exposed to liability. And the other thing we should remember is he's longtime friends with the co-defendant Jabriel Anderson, no relation to Corey, but had never met Corey before. And so that's another thing that affects the jury's consideration of his credibility. And so because he wasn't the most credible witness, it was prejudicial for the state to put in numerous... of his prior handwritten statements to police signed by him that were consistent with his testimony. And just because those prior hearsay statements were written on a photo array, that doesn't bring them within the limited hearsay exception for prior statements of identification. In fact, the statements we think are very similar to the ones this court found erroneous in Peeble v. Randolph. In that case, the police officer testified on direct that he saw the defendant drop an object. His partner picked it up and it was later found to be a controlled substance. And then the state admitted his prior consistent statements written in his police report. Just to that effect, I saw the defendant drop an object that was picked up by my partner. And this court held that, well, that's hearsay. It's not admissible as a prior... prior consistent statements are simply not admissible. And I don't think this court would have come to a different conclusion there if it had been shown that a picture of the defendant was attached to that police report. So I think this is... When you've got a witness identifying more than one person, courts have held that it's okay. It wouldn't mean much to the finder of fact for the witness to say, I picked up that person and I picked up that person without saying, if they're both involved... That's correct, Your Honor. ...who they were, how they participated. So you're actually correct. Witnesses are not to say, I picked up this person... As the shooter. ...this person... As the lookout. Yes. And that is actually correct. So how is that different than what... And that did happen here. And what we're challenging is what... is how the state went further. Bringing out the substance of a prior handwritten signed statement, putting that handwritten statement up on a screen, reading it several times to the jury... But if it's admissible as a statement of prior identification, is there any limitation in the statute on how the state can use it? I mean, you can't make a demonstrative exhibit and display the statement? So I think we have two statements here. One, we have the statement of Carter to the police saying, that's the shooter, that's the... That's the guy who got the gun. Okay. That's one statement. That's admissible under the exception. But then we have this other statement. Okay, the police write it down. This is the person I know as Lord. That's Corey. I saw a gun in his waistband. That's a narration of the crime. I saw another person take that gun. That's the classic handwritten statement, which under Section 115-10.1, the legislature has determined that prior handwritten statements can come in, but they have to be inconsistent with the witness's testimony. And so I think the limit to the prior statement of identification exception comes from looking at 115-10.1 and the general bar against hearsay in general. So I'm trying to understand the parameters of your argument. You're saying that it's okay if Carter had written on the photograph, this is the person who brought the gun. I'm saying it's okay if Carter or the police officer he was talking to came in and said Carter made an oral statement, pointed out, circled Corey and said to me, that was the person that brought the gun. Okay, so what difference does it make that he writes it on the photograph? They say to him, okay, this is the guy who brought the gun. Write that on the photograph so we know which one you're identifying. So the difference is, and I think it's shown by how the State used these written statements here, is that it's a signed written statement is different. It's just like a memorialized handwritten statement that prosecutors take all the time. I want to point out how the State used this in closing arguments. They put it up on a screen array with the written statement below it. The State told the jury that Markell Carter circled this defendant, Corey Anderson, and he indicated in his own handwriting that this is the person I know as Lord. His name is Lord. I saw a gun in his waistband. They are focusing on the handwritten nature, the signed nature, as being powerful evidence, truth. And the law recognizes that written statements are more formative than oral statements and that repeated use of written statements is more formative. And that's why the law bars them because the jurors tend to believe that, which they hear and read and hear again. And so, again, Carter was a critical witness because if Corey doesn't have this gun, he looks just like Raymond Darden and Cortez Robinson, a guy there with nothing to do with this. Jason Burns, the shooter, had this gun in his home under his mattress days earlier. He had the gun when he shot to see him, and he had the gun days later. And so the natural conclusion without Carter is that he brought the gun to commit a murder, which he did, and then he left with it. And so Carter's testimony is crucial. And so we ask, based on that error and the error regarding the alleged threat, that this court reverse and remand for a new trial. Thank you, Your Honor. May it please the Court, Counsel? Again, Matthew Connors on behalf of the people of the State of Illinois. The most important thing to begin this analysis with is a discussion of the fact that the defendant has acknowledged that these claims are forfeited. By choosing to persist with forfeited claims, defendant must demonstrate there was prejudice and that there was plain error, depending on the alternate theories of ineffective assistance of counsel or through plain error. Turning to the first question as presented by defendant, he really focuses this court's attention on the cross-examination or the direct examination of Raymond Darden. And it's important that this court examine the language and the question posed by the prosecutor. Page 91, KKK91 of the brief, defendant refers to the following quote, do you recall being asked this question on cross-examination and giving this answer? Question, when they were in front of the door, defendant said to co-defendant, quote, get out of the way, I'm going to fan their ass. Answer, yes. Do you remember being asked that question at the prior testimony of June 20th of 2010? To which that Raymond Darden replied, yes. That is a compound question that was repeated throughout the record. Pages 79, 87, 91 through 92. No, but when you get the prosecutor, I mean, any impeachment is, were you asked the question and did you give the answers? You only asked the first half of it. Were you asked the question? No, that's not correct. The plain language of the question, again, if I may read, do you recall being asked this question on cross-examination and giving this answer? Both the plaintiffs agreed that that's what appears in the transcript. Now, the people conceded that it would be superfluous to then ask a redundant question afterwards, which was, do you remember being asked that question? It was half of the question. It was half of the question. Okay. So, again, we have the people conceding they guessed it may not have been the best practice, but the question and answer was asked and given. And if there was any dispute, one needs to only look at the next page, when the prosecutor asked Raymond Darden again, after these threats were made to Tamar's, Quall's mother, where did the whole group of you go? And he said, back to McGarry. That follows up nicely with the question of him saying, I acknowledged it. He understood that he acknowledged that there were threats made. It was not just the one threat made by co-defendant Gabriel Anderson. It was multiple threats made by co-defendant and this defendant. The record also demonstrates that Darden specifically refused to acknowledge other statements of his testimony. It points to pages 95, 98, 104, 110, 160, 161. In those occasions, he specifically said, no, I don't recall. He made clear that, no, there were certain statements I refused to acknowledge, certain statements I will. And in this occasion, the prosecutor used that phrase, do you recall being asked this question and give this answer? The people conceded, as they did in their brief, that the second compound question only asked half. That was an unqualified yes. There was no ambiguity in the witness's response. The witness didn't limit his response in any way. And that's why the prosecutor argued at the time of the motion for a new trial, and that's why the circuit court properly exercised its discretion and said that information did come in. And there's no question that the information couldn't have come in. In volume three of the record, there was a motion to eliminate about some of these statements. And if this court looks, there was actually testimony from an assistant state's attorney who did put Darden in. His testimony could have been proved up, but it was unnecessary because he acknowledged that statement. And again, this issue is not preserved because it was not in the motion for a new trial that was litigated below. So defendant has to demonstrate that the error was plain. The fact that we're having a conversation about whether or not this was the best phrasing of the question demonstrates that the error is not plain. It's something that requires some sort of interpretation. Defendant has to demonstrate that the error was plain and that he was prejudiced. We can discuss prejudice by saying that this is not the only evidence that links. Well, it would be prejudicial if Darden's statement, say, for example, Darden's statement had not been allowed. Then the result would have been different. No. The people's position is that there would still be ample evidence to find this defendant guilty under a theory of accountability. We can go through that evidence. What does it include? It's unrebutted that there was a fight between co-defendant Anderson and Thomas Qualls at Xavier Smith's house. Qualls left, came back to Smith's house with two friends. Co-defendant Anderson then called for help. Raymond Darden came with Cortez Robinson, Jason Burns, and defendant. Mark O'Connor testified, I saw defendant with his gun. That doesn't change. That statement, I saw defendant with the gun, is still a testimony. And he's the only one, though. Yes. He's the only one. Sorry, Your Honor. But we do have testimony which specifically says Jason Burns did not have a gun that day. Defense counsel pointed out that there was a gun seen previously. Therefore, the impression is he had the gun. That's not what happened. Jasmine Johnson, Burns' girlfriend, specifically said, I was with Jason that day. He didn't have a gun. The only person that was seen that day with a gun was defendant. So we go back. And Carter, he had some credibility issues. Yes. People can see that many of these people had credibility issues. We had witnesses who did not want to testify. We have witnesses who, in previous hearings, attempted to invoke their Fifth Amendment rights. But those are witnesses that the state were given, and they provided ample evidence. That evidence includes multiple people talking about defendant going along with the group to Tamaris Quall's mother's house after the incident. There was no question the co-defendant threatened the mother during the conversation. We have co-defendant asking for the Kappa, which we know that that means he's asking for the gun. We have testimony that the group of people, including defendant, went to that house looking for a fight. That's established on KKK's 86 through 88. We saw defendant reach for the weapon. Instead of two different occasions, we saw Jason Burns snatch the weapon. That's not consistent with the guy who had the gun with him. We have multiple references to that. There were people. It's unambiguous that Jason Burns committed the shooting. People saw Jason Burns commit the shooting. And then later on, we saw Burns return the gun to defendant. So there is no question there would have been ample evidence to demonstrate violent design. The use of the term return means that you have to believe that the defendant had the gun in the first place. Yes. There's evidence that Burns gave the gun later to the defendant. Yes. That's believable. But there's still a question mark about whether or not the defendant had it in the first place. To the extent that the court doesn't believe Darden's testimony, there is nothing in the record to demonstrate that Burns had that weapon. But, again, this is not a reasonable doubt argument. Because if it was, all the evidence that was available to the prosecution would say that the testimony saying that Burns did not have a weapon with him prior to the shooting would really forestall any argument that the shooter was armed prior to the incident. Again, this is all done through the guise of either plain error or ineffective assistance of counsel for failing to preserve an evidentiary ruling. Because that's what this initially comes to the conversation based upon, is the evidentiary ruling by the circuit court that, in fact, the circuit court properly acknowledged that evidence came in? Turning to the second question, again, we're discussing a forfeited issue, whether or not a statement of identification admitted to pursuant to Subsection 115.12 was proper. The people's position, as Justice Mason pointed out, is that it's proper in and of itself to say this is the person. We had multiple photo arrays on two different days, the same witness being asked to identify multiple people. How does this happen in the investigatory process? It happens by saying, this is Jason Burns. This is the person that I saw shoot the person. That's what he wrote on that photo. The next day, Markel Carter came back to the station at the worst point in time. He was asked to identify another photo array. He identified this defendant and said, this is the person who I know is Lord, who had the gun prior to the shooting. This is part of the investigatory process. The officers are out there looking for people. You have to tie the relevancy of these people and of the identification to the actual people. Had there just been a picture saying, I identified that guy, that doesn't tie the witness's involvement to the offense. Well, as I understand Mr. Cassidy's argument, though, he's saying he concedes that some descriptive language is okay. To say, Corey Anderson is the one who brought the gun. He says that's okay. But then he's saying what the state did at trial was take this writing on the photograph, make it a demonstrative exhibit, really reinforce it to the jury. And is there such a thing as overuse of an otherwise admissible statement? Again, this is defendant's burden on appeal when he is choosing to persist with a claim that has been forfeited. He has not demonstrated an otherwise admissible piece of evidence. Like this has been held to be reversible error. The analogy that counsel has drawn to the police reports used in Randolph is fundamentally different because it's a police report. It's not being used pursuant to the admission of 115-12. This is not a 10.1 statement of admission of a statement that we have consistently in the other witnesses. This is a statement of identification. It's something in writing? Yes. We see hundreds of photo arrays every week. They have circles or X's. The whole time I've been here, I've never seen one with handwriting over the head of somebody. That really struck me as very distinct and very unusual. And my guess is that the state thought, aha, we've got something golden here. We can use this. And you did. And you used it effectively. The question for us is whether or not that's not a slippery slope. I mean, what happens when the police department decides, well, we got away with it on Coriander, so we'll just do this for everybody. Get the photo array witness to start writing on the corners and in the borders and on the pictures and all over the place about what happened and do a narrative statement of what was going on. Which is what this was, a narrative statement. There was a statement. And, again, the question being posed by defendants. But it wasn't under oath. It was just a statement. He was subject to cross-examination. It was a statement to the police. And the police could just as easily have testified what the identification was, that this is the guy that this witness identified as the guy that brought the gun. They could have done the same thing. They could have. And then that could have been further fodder for cross-examination. See, our question always asks me, what happens in the next case when somebody writes all over the edges and the borders and the margins and tells their whole story and the cops then give that to the state's attorney and then the state's attorney shows that to the jury and they sort of make their case indirectly with, you know, fault markers. So that's predicated upon a number of assumptions. First of all, is that improper? Is it improper to make that initial notation? This Court has consistently held that any other notation is fine. We would have the recognition of an X or a person identifying. I don't know about my 23 other colleagues, but I've never seen a notation like this. I'm not saying this specific notation. I'm saying the general one that we've all seen in our careers. Well, we see Xs and circles. Xs and circles. That's fine. Those are identifiers. That's a demonstrative statement of I identified this person. How would I identify that person? Now, part of the reason this came in was closing argument. Throughout closing argument, defense counsel referred to witnesses as a snitch. It was more than closing argument. It was a giant screen with this handwriting on it. As an evidentiary statement, it's the people's position that that's what was done during the investigatory process. It's before the state was involved. They had this evidence. The parties could have yes, Your Honor? I'm sorry? So you've got Carter saying on the witness stand, this is the guy that I saw brought the gun. He says that. That's his testimony. That's evidence. The jury hears that. Yes. And then you boost that up a notch, maybe ten notches, with this exhibit of a picture that was with handwriting on it that was not under oath, that was in a police station when they were discussing his who knows what, maybe his juvenile case, maybe his involvement in this case. God only knows. And the jury now hears something on the stand, and they see something that's a picture. How is that not wrong? Because in and of itself, 115.12 allows for the admission of a statement. The plain language is the statement is one of identification of a person made after perceiving him. That is the plain language of the statute. This is Lord. This is the person I saw with the gun. That is a statement of identification. It ties this witness's recollection. That's his testimony under oath in court. No, that was the statement that was written on the receipt. Again, page nine of the reply brief, defendant admits the propriety of this. So now we're talking about this is properly admitted evidence. Now, is it used in aggregate? That's the question that this court wants to say. Was it used in aggregate? Yes, it was. But it wasn't used improperly because it goes to this witness's ability to identify defendant at trial. That was an issue. What did this defendant see? This is the person I saw with the gun. Defendant's theory of the case is I never had a gun. If there was nothing to tie that gun to defendant, we'd be standing up here with a different argument because he'd say there's no evidence about this gun. That's not what would happen. We had a witness that they sought to attack and said he didn't have the opportunity to view. It was dark. He didn't see. At one point, they had a conversation about, well, the young kids these days, they wear baggy pants and they tend to sag down. That's probably what he had on at the time, isn't it? So this isn't something that was put on just in an attempt to make a stronger, more compelling point. It was responsive to the evidence that came in. And again, this has to come in either through plain error or it's the defendant's burden to demonstrate under the first prong that the evidence is closely balanced, and it's the people's position that there's ample evidence that it wasn't, or through ineffective assistance of counsel. And what would have been the prejudice in this case if we established that the evidence all leads to the same point, that there was a common design. This group of young men got together looking for a fight. The defendant came armed for that fight. Everybody was on the same page. There's no question about all of those circumstances. The only question, whether or not the defendant's argument that he wasn't carrying a gun, that's the only point about it he can point to on appeal. So if there are no further questions, for all those reasons, go stay in the People's Brief. We ask that you affirm the convictions and remain for post-trial proceedings. Thank you. Thank you, Your Honors. It was the gun that made this case, the allegation that Corey had a gun. That's what makes him different than Darwin, Cortez, Robinson, and the other boys that weren't charged out there. And it was only Martel Carter that saw him with that gun. And I think it's clear now, there aren't any cases so far that have proved such narrative statements on these arrays. And so I do think it's clear. But, you know, the case you relied on, Randolph, involved reading off police reports. That's different because here we have a statutory basis for admitting a statement of prior identification. We have. The case is not directly on point, Your Honor. We don't have a case, I don't think, directly on point that allowed a handwritten, signed narrative statement. So this Court has to decide where that line is to preserve the rule about inconsistent written statements, but to give the fact of this rule. And I think that line is, I told the police this was a person who was a shooter. I told the police this was a person who brought the gun. And the police can testify. I heard them say that. And that's it. You can't put these statements up repeatedly, signed written statements, just because they're on a photo array before the jury. And when you do, it's prejudicial. And just one factual note, Jasmine Johnson said she didn't see Burns with a gun that day, but she also said she didn't see Corey with a gun that day. So prior to the shooting, she sees Burns with a gun after the shooting. She saw Burns with a gun days before the shooting. Correct me, there were a group of young men. Yes, Your Honor. Burns and Anderson and Corey were two of them. Yes, Your Honor. Was anybody asked whether they saw any of the other bunch of kids with guns? No, I don't think anyone other than Carter saw anyone with a gun, except the people who all saw Burns shoot into the car. Okay. So, I mean, your theory is it's entirely possible that either Burns had the gun when he got there or that he got the gun from some other kid, but he didn't get it from Corey. Right. Our theory is right. The natural conclusion without Carter's testimony is he brought the gun because it was his gun, it was under his mattress, and he used it to kill his people. All right. Thank you, Your Honors. Thank you. Gentlemen, thank you very much for your arguments and your wonderful briefs. We've enjoyed both, and we will take this case under advisement.